

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| SCOTT FLUCK, <br> *Plaintiff*, | § <br> § <br> § | |
| V. | § | CASE NO. 1:12-CV-42 |
| | § | |
| CAROLYN L. COLVIN,[1] <br> **Commissioner of Social Security** <br> **Administration**, <br> *Defendant.* | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER
## ON COMMISSIONER'S DECISION

In accordance with 28 U.S.C. § 636(c), the Local Rules for the United States District Court for the Eastern District of Texas, the parties' consent and order of the District Court, the above-captioned civil action is before the undersigned United States Magistrate Judge for consideration of all matters and entry of judgment. *See Order Referring Case* (doc. #22). Plaintiff instituted this action under 42 U.S.C. § 405(g) seeking judicial review of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C § 405(g), she is automatically substituted as a party.

Commissioner of the Social Security Administration's (hereafter "Commissioner') decision regarding his Social Security benefits.

## I. Background

Plaintiff applied for disability insurance benefits (DIB)[2] and Supplemental Security Income (SSI) on November 17, 2009, claiming disability beginning May 20, 2000 (Tr. 11). The plaintiff claims disability due to a rotator cuff tear in his left shoulder, neck injury, back problems, depression and anxiety (Tr. 133). Following denials of his applications (Tr. 58-62), Plaintiff requested and received an evidentiary hearing before an administrative law judge ("ALJ"). ALJ Osly Deramus conducted a hearing on April 19, 2011, in Paris, Texas, (Tr. 11, Tr. 24-52), at which time Plaintiff was present and accompanied by a non-attorney representative. The plaintiff testified at the hearing. A vocational expert ("VE"), Charles Smith, also testified.

On May 3, 2011, the ALJ issued his findings (Tr. 11-19). He ultimately concluded that the plaintiff is not disabled (Tr. 18). In reaching this decision, the ALJ first found that the plaintiff has the severe impairments of left shoulder problems including a torn rotator cuff and degenerative disk disease of the cervical and lumbar spine (Tr. 13). The ALJ next

---

[2] Supplemental Security Income ("SSI"), authorized by Title XVI of the Social Security Act, provides an additional resource to the aged, blind, and disabled to assure their income does not fall below the poverty line. Disability insurance benefits ("DIB"), authorized by Title II of the Social Security Act, provides income to individuals who are forced into involuntary, premature retirement. Eligibility for SSI requires proof of indigence and for DIB requires proof of insured status. Additionally, applicants seeking benefits under either program must prove disability within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2013).

concluded that Mr. Fluck does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Supbpart. P, app. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.025 and 416.926) (Tr. 14). The ALJ next determined that Plaintiff has the residual functional capacity [3] ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except that he can occasionally stoop, crouch, crawl, kneel and balance; he can only occasionally climb stairs and can never climb ladders; he is unable to raise his left upper extremity overhead but he can occasionally reach in other directions with his left upper extremity; and he must avoid exposure to extreme cold (Tr. 15). At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work as a welder (Tr. 17). The ALJ next determined that there are jobs which exist in significant numbers in the national economy that the plaintiff can perform, including a parking attendant (Tr. 18). The ALJ accordingly determined that Plaintiff has not been under a disability as defined by the Social Security Act from May 20, 2000, through May 4, 2011, the date of the ALJ's decision (Tr. 18-19).

The plaintiff appealed that decision, and the Appeals Council of the Social Security Administration ("Appeals Council") affirmed the ALJ's determination, making it the final decision of the Commissioner (Tr. 2-4). Plaintiff then filed the instant appeal in this federal court, seeking judicial review of the Commissioner's decision denying the application for

---

[3] "Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1) (2013). It takes into account physical and mental limitations that affect what a claimant can do in a work setting. *Id.*

Social Security disability benefits. *See Complaint* (doc. #1). The parties have since filed their briefs (doc. #16, doc. #17) and the Court has received the transcript. Accordingly, the case is ripe for review.

## II. Judicial Review

United States district courts may review decisions of the Commissioner. 42 U.S.C. § 405 (2012). However, Congress limits the scope of judicial review to determinations of whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal citations omitted). It is more than a mere scintilla but less than a preponderance. *Id.* When the Commissioner applies proper principles and her decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 230 (1938)); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A court cannot reverse the Commissioner simply because the court

might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. Feb. 27, 2006); *see also Ripley*, 67 F.3d at 555 (stating that the court may not substitute [its] judgment for that of the Secretary). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III. Law Governing Disability Determination

The law requires the Commissioner to make individualized determinations of whether claimants have disabilities that make them eligible to receive benefits authorized under the Social Security Act. *See Heckler v. Campbell*, 461 U.S. 458, 466 (1983). To satisfy this duty, the Commissioner utilizes a five-step sequential evaluation analysis. When a claimant is found disabled or not disabled at any step, remaining steps are not considered. 20 C.F.R. § 404.1520 (2012). This procedure has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (The use of the

sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The five steps - with explanatory parenthetical commentary - generally are as follows:

1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered and the inquiry ends.)

2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings")[4]. (If so, disability is presumed and benefits are awarded. If not, the analysis continues.)

4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment.* (If so, a prima facie case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

---

[4] Appendix I, Subpart P, Part 404 of the Regulations lists impairments and indicators of medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013). A person whose impairment meets or equals an impairment in the Listing is presumptively disabled. 20 C.F.R. § 404.1520(d) (2012); *see* Soc. Sec. R. 88-3c (1988), 1988 WL 236022, at *7.

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 404.1520(a)-(f) (2013)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### IV. Points of Error

Here, the plaintiff alleges two points of error:

(1) The ALJ's RFC finding is not supported by substantial evidence; and

(2) The ALJ erred in relying on the VE's testimony in finding that the plaintiff retains the ability to perform other work existing in significant numbers in the national economy.

More specifically, Plaintiff contends that ALJ's RFC determination does not include

all of the plaintiff's limitations. The plaintiff argues that the evidence of record shows that the ALJ should have incorporated the plaintiff's difficulties with his left hand. He also avers that the ALJ erred by failing to incorporate any limitations due to his cervical degenerative disc disease. *See Plaintiff's Brief*, at pp. 4-7. Next, the plaintiff argues that the ALJ erred in relying on the VE's testimony because that testimony conflicts with the description for a parking lot attendant as set forth in the Dictionary of Occupational Titles[5] ("DOT"). *Id.* at pp. 7-10.

### V. Discussion and Analysis

(1) The ALJ's RFC Finding

RFC is not the least an individual can do, but the most. SSR 96–8p, 1996 WL 374184, at *2 (1996). The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered, and is based upon all of the relevant evidence in the case record, including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source

---

[5] The Department of Labor developed and published the Dictionary of Occupational Titles to provide a comprehensive classification of all the jobs in the American economy in order to render scientific the process of matching unemployed workers with appropriate jobs. *See* Deborah C. Malamud, *Engineering for the Middle Classes: Class Line-Drawing in New Deal Hours Legislation*, 96 Mich. L. Rev. 2212, 2278, 2282 (1998). An ALJ may rely on and take notice of job data in the DOT which reflects the exertional limitations as performed in the national economy. *See Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. Feb. 17, 2011) (per curiam) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)).

statements, and work evaluations. SSR 96–8p, 1996 WL 374184, at *3–5. Exertional capacity addresses an individual's ability "to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Further, an ALJ may rely on a "function-by-function" assessment performed by a examiner. *See Beck v. Barnhart*, 205 F. App'x. 207, 213–14 (5th Cir. Oct. 27, 2006).

As stated above, the ALJ found that Mr. Fluck retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that he can occasionally stoop, crouch, crawl, kneel and balance; he can only occasionally climb stairs but can never climb ladders; he is unable to raise his left upper extremity overhead but he can occasionally reach in other directions with his left upper extremity; and he must avoid exposure to extreme cold (Tr. 15). Plaintiff points to medical evidence in support of his argument that the ALJ should have incorporated additional limitations. However, there is also substantial evidence to support the ALJ's RFC determination and his declination from imposing the additional limitations urged by the plaintiff.

Specifically, in March 2009 Mr. Fluck was seen at the Penn State Hershey Medical Center, at which time he stated that he was dropping objects from his left hand (Tr. 372) At the same time, he also reported that he was currently working on his father's farm. *Id.* He was amble to ambulate independently and was not in acute distress (Tr. 373). He reported numbness in his small finger and decreased sensation in three other fingers. *Id.* The report

shows that he did have paresthesias[6] to the hand on the ulnar Tindel test. *Id.* The evaluating physician found that Fluck suffered from left shoulder pain and recommended that he continue with therapy exercises to the shoulder. *Id.*

Other medical evidence shows that although the plaintiff reported sometimes dropping things and inability to lift heavy objects, he retains the ability to lift and manipulate objects without limitation using his right upper extremity. *See March 25, 2010, Report of Dr. Barry Follweiler* (Tr. 431-433). He exhbited decreased grip strength and decreased sensation in the left hand, but his reflexes were equal and normal and sensation is intact to touch, pain and vibration (Tr. 433).

Additionally, the June 21, 2010, RFC assessment by Dr. Leo Potera with the State Disability Determination Services supports the ALJ's RFC assessment (Tr. 448-452). Potera determined that the plaintiff retained the RFC to perform limited reaching, pushing and pulling with upper extremities, and unlimited handling, fingering, and feeling (Tr. 449-450).

As for the plaintiff's back problems, the medical evidence shows that he has decreased range of motion of the neck and lumbar spine and has been diagnosed with degenerative disc disease of the cervical and lumbar spine. *See Dr. Follweiler Report* (Tr. 433-434). However, as the ALJ states in his findings, the medical evidence also shows that Plaintiff's pain is controlled with medication (Tr. 16, Tr. 480). The plaintiff also states that he is able to perform tasks such as meal preparation, dish washing, bringing in wood, tending to the

---

[6] "Parasthesia: A spontaneous abnormal usually nonpainful sensation (e.g. burning, pricking)[.]" *Stedman's Medical Dictionary* 1425 (28th ed. 2006)."

fireplace, driving, going out alone, shopping alone, and helping around the house.[7] (Tr. 144-145, 431).

In summary, the evidence shows that the plaintiff has limitations and pain related to his left shoulder and some sensory difficulties in his left hand, as well as a diagnosis of degenerative disc disease. However, the substantial evidence also supports the ALJ's implicit determination that the plaintiff was able to perform fine and gross manipulation with his left hand. The plaintiff's subjective complaints report gripping and manipulative problems with his left hand[8], but the allegedly limiting nature of these symptoms is contradicted by his statements regarding his abilities to do daily activities and working on his family's farm. There is also a lack of objective medical evidence supporting the gripping limitations to the extent alleged. Furthermore, as the ALJ points out, although Fluck undoubtedly experiences some discomfort from his impairments, his pain appears to be controlled by medication and he is able to do more than what would be encompassed by the limitations which he alleges. This is reflected in the ALJ's RFC determination. The record shows that the ALJ considered the evidence regarding the plaintiff's limitations when he reached his conclusion regarding the ability to do a limited range of light work. There is is substantial evidence to support the ALJ's findings regarding the RFC determination. The

---

[7] It is appropriate for the court to consider the claimant's daily activities when deciding disability status. *See Leggett*, 67 F.3d at 565 (citing *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam).

[8] Subjective symptoms standing alone, absent supporting medical evidence, are insufficient to support a disability finding. *See Salgado v. Astrue*, 271 F. App'x 456, 460 (5th Cir. March 28, 2008 ) (per curiam) (citing SSR 96-7p and 20 C.F.R. § 404.1529).

ALJ's conclusion is therefore conclusive and must be affirmed. *See Perez v. Barnhart*, 415 F.3d 457,461 (5th Cir. 2005) .

(2) The ALJ's reliance on the VE testimony

In the Fifth Circuit, when a VE's testimony conflicts with the DOT, "the ALJ may rely on the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Further, DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job. *Id*. at 145. Social Security Regulation 00-4p states: "[w]hen there is an *apparent* unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p, 2000 WL 1898704, at*2 (2000) (emphasis added).

Here, the VE testified that under the limitations set forth by the ALJ in his RFC finding, an individual could perform the job of parking lot attendant as listed in the DOT (Tr. 48-51). The ALJ specifically stated in his hypothetical to the VE that there would be no reaching overhead with the left upper extremity (Tr. 49). Plaintiff argues that there is a discrepancy in the VE's testimony that an individual with these reaching limitations could

perform the parking lot attendant job because the DOT definition for parking lot attendant requires frequent reaching. *See Dictionary of Occupational Titles* § 915.473-010. The DOT definition does not specify whether the reaching requirement could be achieved unilaterally, i.e. done with one upper extremity. *See id.* As explained in *Carey*, implicit conflicts are possible and "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Carey*, 230 F.3d at 146. Despite the plaintiff's argument to the contrary, the Court finds no direct conflict between the DOT and the VE's testimony. The DOT is silent as to the unilateral ability to reach regarding the parking lot attendant job's physical demands. Although the definition may require frequent reaching, there is no indication that this would necessarily involve frequent reaching by both extremities. The Fifth Circuit has noted that the DOT is not comprehensive in that it cannot and does not purport to include each and every specific skill qualification for a particular job. *Id.* at 145. Because this case involves an implied or indirect conflict - not direct - the ALJ properly relied on the VE's testimony because the record provides an adequate basis for doing so. *See Carey*, 230 F.3d at 145-146. There is persuasive evidence to support the slight deviation from the DOT as based on the VE's testimony, including the evidence that the plaintiff is not limited in his reaching ability in his right upper extremity. Similar to *Carey*, where the claimant was limited to the use of one arm and hand, the facts of this case do not present any actual conflict between the DOT and the VE's testimony because the DOT does not include a specific requirement of bilateral dexterity for reaching abilities. *See id.* at 146.

Furthermore, Fluck had a qualified claimant representative at the ALJ hearing yet he failed to raise the issue or challenge the VE's testimony regarding the reaching issue. Because no conflict was suggested during cross-examination, nothing at the hearing triggered any reason for the ALJ to "obtain a reasonable explanation" for and explain his resolution of conflicts. *See Veal v. Astrue*, 618 F. Supp. 2d 600, 611-612 (E.D. Tex. 2009), (citing SSR 00-4p). Moreover, as pointed out *supra*, there was no "direct and obvious" conflict requiring the ALJ to identify and resolve such conflicts *sua sponte*. *See id.*

Accordingly, based on the above-stated analysis and considering the specific facts of the case, the undersigned finds that the ALJ did not err in relying on the VE's testimony at step five and the Commissioner carried her burden in establishing that Fluck could perform other available work. The Court, therefore, will not disturb the Commissioner's decision and Plaintiff's point of error in this regard is overruled.

## VI. Conclusion and Order

Based on the findings and legal conclusions stated herein, the Court **ORDERS** that the Commissioner's decision is **AFFIRMED** and this above-entitled social security action is **DISMISSED**, with prejudice. The Court will enter final judgment separately.

**SIGNED this the 12nd day of September, 2013.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE